UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DESMOND MAPP

VERSUS

UMG RECORDINGS, INC.

CIVIL ACTION

NO. 15-602-JWD-RLB

## RULING AND ORDER

Before the Court is a Motion to Dismiss or for Summary Judgment filed by Defendant UMG Recordings, Inc. ("Defendant"). ("Motion," Doc. 54). Plaintiff Desmond Mapp ("Plaintiff") has filed an Opposition, (Doc. 60), and Defendant has filed a Reply in further support of the Motion. (Doc. 61).

For the reasons stated below, Defendant's Motion is granted.

### I. Factual Background[1]

Plaintiff is a record producer, singer, and songwriter residing in Baton Rouge, Louisiana. (Doc. 51 at 2). Defendant is a Delaware corporation with its principal place of business in California that is engaged in the business of manufacturing, distributing, and selling records in various mediums and formats. (*Id.* at 2).

Tyga Music, LLC ("Tyga Music") is an entity formed to furnish the recording services of Michael Stevenson ("Tyga") exclusively to Young Money Entertainment, LLC ("Young Money"). (*Id.*). Young Money is "party to an agreement" with Cash Money Records, Inc. ("Cash Money") providing Cash Money the right to exclusively manufacture, distribute, promote, and exploit

---

[1] Because the Court considers the Motion under the standards set forth in Federal Rule of Civil Procedure 12(b)(6), *see infra*, the Court accepts as true all plausible factual allegations, but not legal conclusions, set forth in the Third Amended Complaint.

1

records from Young Money. (*Id.* at 2-3). At all relevant times, Defendant exclusively provided Cash Money access to record manufacturing and distribution services "throughout the World." (*Id.* at 3).

In November 2011, Plaintiff produced a wordless musical composition entitled "Molly." (*Id.*). He was the owner of the copyright in this composition and "all exclusive rights under copyright." (*Id.*).

In September 2012, Plaintiff signed an agreement offering to "convey" Molly to Tyga Music so that Tyga could add lyrics. (*Id.*). Tyga Music agreed to pay Plaintiff an advance of $10,000 plus royalties based on the sale of the completed composition. (*Id.*). After Tyga added lyrics, Tyga and Tyga Music "conveyed" copyright in the completed composition to Young Money and Cash Money "and/or their agents and assigns." (*Id.* at 4).

At some later date, Young Money or Cash Money "conveyed" copyright in the completed composition to Defendant, which began exploiting it as a single in March 2013 and on Tyga's album in April 2013. (*Id.*).

Tyga Music never paid Plaintiff the advance or the full value of the royalties. (*Id.* at 4-5). Therefore, Plaintiff filed suit in state court and, in April 2015, the agreement between Plaintiff and Tyga Music was judicially dissolved, with the court reserving to Plaintiff the right to seek damages. (*Id.* at 5).

In June 2015, Plaintiff sent Cash Money and Defendant a cease-and-desist letter notifying them that the agreement between him and Tyga Music had been dissolved. (*Id.*). In August 2015, Plaintiff filed a copyright registration for the version of Molly without lyrics and has received confirmation of the filing of his copyright case and made a "complete material deposit." (*Id.*).

According to Plaintiff, Plaintiff and Defendant are the co-owners of the completed composition "[b]y virtue of the exclusive transfer of copyright ownership by [Tyga], Tyga Music, Young Money and/or Cash Money to [Defendant] (i.e. [Defendant] stepping into the shoes of [Tyga], Tyga Music, Young Money and/or Cash Money) and the dissolution of the September 1, 2012 Agreement." (*Id.* at 6). Defendant has sold thousands of copies of Tyga's album and of the completed composition, and also has leased, licensed, or rented the completed composition, but Defendant has failed to pay Plaintiff his share of the income earned from the completed composition. (*Id.* at 5-6). Plaintiff also contends that Defendant "claims to be the exclusive transferee of copyright" in the completed composition. (*Id.* at 4).

On the foregoing grounds, Plaintiff's Third Amended Complaint seeks an accounting of the profits earned from the completed composition and alleges claims of "unjust enrichment/quantum meruit/constructive trust," conversion, and negligence. (*Id.* at 7-10).

**II.     Procedural History**

This action was initiated on September 9, 2015, by the filing of a Complaint (Doc. 1), which was superseded almost immediately by an Amended Complaint (Doc. 2). In relevant part, the Amended Complaint alleged that Plaintiff was the sole copyright holder in Molly and that Defendant had infringed Plaintiff's "copyright and exclusive rights under copyright" by distributing or selling Molly without Plaintiff's "permission or consent." (*Id.* at 5-6). The Amended Complaint also raised state law claims for "unlawful, unfair, and/or fraudulent business practices." (*Id.* at 8).

Defendant moved for judgment on the pleadings, (Doc. 16), and the Court ultimately granted the motion, (Doc. 44). The Court analyzed the authorship of the completed composition and ruled that "the evidence, even viewed in light most favorable to Plaintiff, indisputably shows

that [the completed composition] was a joint work by [Tyga] and Plaintiff. Therefore, they are co-authors and co-owners." (Doc. 44 at 16).

The Court then considered the scope of the rights that Tyga could convey or license to Cash Money and, ultimately, to Defendant. (*Id.* at 17-24). The Court ruled that Tyga could grant an "exclusive license" as to his own interest but not as to Plaintiff's interest; "Plaintiff, for all intents and purposes, may regard the alleged 'exclusive license' as a nonexclusive license that does not infringe upon his copyright." (*Id.* at 23). The Court also dismissed Plaintiff's state law claims for lack of supplemental jurisdiction. (*Id.* at 29-31). Plaintiff moved for reconsideration of the dismissal of his state law claims, arguing that diversity jurisdiction existed. (Doc. 45). The Court ruled that it would permit Plaintiff to further amend his pleadings to clearly allege diversity jurisdiction. (Doc. 48 at 10, 15). The Court also stated that Plaintiff was "free to allege additional state law causes of action under the facts currently alleged." (*Id.* at 12). It also stated that Plaintiff would not be permitted "leave to allege new factual allegations to which Defendants did not already have notice." (*Id.* at 14; *see also id.* at 15 ("Plaintiff will not be permitted to state new factual allegations in his amended complaint.")).

The Third Amended Complaint was filed June 7, 2017. (Doc. 51).

### III. The Motion to Dismiss or for Summary Judgment

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, in the alternative, for summary judgment. (Doc. 54 at 1). First, Defendant argues that Plaintiff's allegation that he and Defendant co-own the completed composition is a "new factual allegation" of which Defendant did not have notice and is inconsistent with his prior allegations and theories and the Court's prior ruling. (Doc. 54-1 at 6-7). Relatedly, Defendant argues that, consistent with

4

the Court's prior ruling, it is a licensee, not a co-owner, and as such it is not susceptible to a claim for an accounting. (*Id.* at 8-11).

Next, Defendant argues that the Copyright Act preempts Plaintiff's unjust enrichment, conversion, and negligence claims. (*Id.* at 11-16). Defendant further maintains that Plaintiff's unjust enrichment, conversion, and negligence claims are prescribed under state law. (*Id.* at 16-17). Finally, Defendant argues that (1) unjust enrichment is unavailable because Plaintiff has other remedies at law; (2) Plaintiff's conversion claim fails because he did not allege interference with "a moveable or chattel"; and (3) Plaintiff's negligence claim fails because he has not alleged facts to support the conclusion that Defendant owed him a duty. (*Id.* at 17-20).

In opposition, Plaintiff first claims that Defendant is a transferee of a co-ownership interest in the completed composition because it received an exclusive license from Cash Money to distribute "Cash Money product" in the United States. (Doc. 60 at 4-7). Next, Plaintiff argues that Defendant did not timely oppose the filing of the Third Amended Complaint and that Defendant had notice of Plaintiff's allegations, as they are based on Defendant's "agreements with Cash Money, the scope of the rights granted and the legal effect of the exclusive grant of rights." (*Id.* at 7-8). Plaintiff argues that, because Defendant and Plaintiff are co-owners of "at least some quantum of copyright," an action for accounting is proper, and the Court should deny the Motion or delay ruling until discovery is complete. (*Id.* at 8-9).

Plaintiff also contends that his claims for unjust enrichment, conversion, and negligence are not preempted by the Copyright Act and that the prescriptive period for these claims began to run in June 2015, when Defendant continued distributing the song after receiving a cease-and-desist letter. (*Id.* at 9-10). Plaintiff also requests that, if the Court considers this motion as a

5

motion for summary judgment, Plaintiff receive an opportunity to be heard and present further materials in opposition. (*Id.* at 10).

In reply, Defendant reiterates the arguments raised in its Motion, arguing that the opposition does not meaningfully address the Motion's arguments regarding unjust enrichment, conversion, or negligence. (Doc. 61 at 1-3). With respect to Plaintiff's request for an accounting, Defendant reiterates that it is not a co-owner of the completed composition. (*Id.* at 3-5).

**IV.     Standard of Review**

The Motion seeks dismissal under Rule 12(b)(6) or, in the alternative, summary judgment. (Doc. 54 at 1). The Court will set forth both standards and then determine which standard to apply.

In *Johnson v. City of Shelby, Miss.,* ⸺ U.S. ⸺, 135 S. Ct. 346 (2014), the Supreme Court explained that "[f]ederal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual

6

allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)]; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.,* 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff . . . To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff state a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

With respect to summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with

7

'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

The key difference between these standards is the scope of the Court's inquiry. A Rule 12(b)(6) motion permits only the evaluation of the complaint, its attachments, documents incorporated into the complaint by reference, and judicially noticeable documents. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). A summary judgment motion requires the review of record evidence. *See International Shortstop, Inc.*, 939 F.2d at 1263.

The only record evidence cited in connection with the Motion consists of alleged agreements between Cash Money and Defendant purporting to convey an exclusive license to Defendant. (*See* Doc. 60 at 5-6). For reasons set forth *infra*, it is unnecessary for the Court to consider this evidence in evaluating the Motion. Therefore, the Court will consider the Motion under the standards of Rule 12(b)(6).[2]

---

[2] In any event, because the Court decides the Motion on purely legal grounds, the result would be the same under either standard. *See Mendoza v. Perez*, 754 F.3d 1002, 1016 (D.C. Cir. 2014) ("[D]efendants challenge the sufficiency of those facts to meet the legal standard for injury in fact, causation, and redressability. The standard for resolution of

## V. Discussion

### a. Plaintiff's Claim for an Accounting

Plaintiff seeks an accounting of the profits earned from the completed composition. (*See* Doc. 51 at 7). This argument is based on Defendant's alleged status as a co-owner following Defendant's alleged receipt of an exclusive license from Cash Money. (Doc. 60 at 6-7).

As the Eastern District of Louisiana has discussed:

> Fifth Circuit law makes clear that the duty to account to other co-owners arises from "general principles of law governing the rights of co-owners." *Quintanilla v. Tex. Television Inc.,* 139 F.3d 494, 498 (5th Cir. 1998) (quoting *Goodman v. Lee,* 78 F.3d 1007 (5th Cir.1996)). A right of accounting may only be enforced against a joint owner. 1 Nimmer on Copyright § 6.12[B]. A joint owner has no right to an accounting against a licensee. *Id.*

*Burkitt v. Flawless Records, Inc.*, 2005 WL 6225822, at *13 (E.D. La. June 13, 2005).

Plaintiff's claim for an accounting fails. First, the Court agrees with Defendant that Plaintiff's arguments are foreclosed, in substantial part if not entirely, by the Court's prior order. The Amended Complaint, which was the operative pleading throughout most of this action prior to its initial dismissal, argued that Plaintiff was the sole copyright holder and that Defendant had infringed these rights. (*See* Doc. 2 at 5-6). The Court ruled, *inter alia*, that "various preexisting agreements" ultimately afforded Defendant "a valid license" to exploit the song. (Doc. 44 at 22). The Court further determined that Plaintiff could "regard the alleged 'exclusive license' as a nonexclusive license that does not infringe upon his copyright." (*Id.* at 23). In analyzing Plaintiff's claims, the Court favorably cited *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007), for the principles that: (1) an exclusive license "grants all co-owners' shares of a particular copyright interest to the exclusive licensee"; (2) accordingly, a co-owner cannot unilaterally grant an exclusive license;

---

these legal arguments is the same at the motion to dismiss stage as it is on a motion for summary judgment."). It also appears that further discovery and argument would be unnecessary to resolve the legal questions presented.

(3) a non-exclusive license conveys no ownership interest; and (4) a licensee is not liable to a non-licensing co-owner for use authorized by the license, and a licensee need not pay any royalties or other consideration to the co-owners not party to the license agreement. (Doc. 44 at 20 (citing *Davis*, 505 F.3d at 99-101)). Plaintiff's present claim that, by virtue of an exclusive license, Defendant is a co-owner who must account to Plaintiff, (Doc. 60 at 2, 6-7), is a factual allegation inconsistent with Plaintiff's previous representations and the Court's prior decision.

In any event, Plaintiff's claim for an accounting is meritless. *Nimmer on Copyright*, "[t]he leading treatise in the field," *see Galiano v. Harrah's Operating Co.*, 416 F.3d 411, 419 (5th Cir. 2005), considers and rejects the argument that a purported "exclusive licensee" of a coauthored work is liable to the work's other owners for an accounting:

> A licensee has no duty to account to the joint owners of a work other than to the particular joint owner who is his licensor, and then only to the extent that the terms of the license require such an accounting. A transferee however has an absolute duty to account to all of the joint owners. It is, then, obvious that the sometimes shadowy distinction between a license and a transfer may become crucial for these purposes. . . . Under the current Act a grant of any exclusive right comprised in a copyright is treated in the same manner as an assignment (either of which is called a "transfer") while a non-exclusive grant is not a "transfer" but only a license. *Since . . . a grant executed by less than all of the joint owners of a copyright is necessarily non-exclusive, it follows that any such grant constitutes a non-exclusive license. Under the current Act is an exclusive licensee of certain limited rights to be regarded as a transferee for the purpose of subjecting him to a duty to account to the other owners of the work? It appears that there is no such duty*, and that, indeed, there is no relationship of joint ownership as between such a transferee and the transfering joint owners.

1 *Nimmer on Copyright* § 6.12(C)(3) (2017) (emphasis added). Additionally, in *Siegel v. Warner Bros. Entm't Inc.*, the Central District of California analyzed a similar issue:

> Plaintiffs . . . take a different view of the licenses, arguing that "Warner has stepped exclusively into DC's shoes with respect to such motion picture and television copyrights." In other words, the exclusive license had the net effect of substituting WBEI for DC Comics as a joint owner with plaintiffs (assuming the successful termination of the 1938 grant) insofar as the exploitation of the copyright in the mediums in which those licenses are concerned.

10

> This theory, however, requires large legal leaps that are not countenanced by current law. To begin, in order for an exclusive license in the entirety of the interest in a joint work itself (such as Superman) to be effective, the consent of both joint owners in the copyrighted work is required. The same requirement for prior consent holds true even with respect to the wholesale transfer of exclusive licenses in subparts to a copyright, such as a license transferring all the stage rights (not just the joint owner's rights) to a novel but not the movie or literary rights.
>
> Such consent simply did not occur here. DC Comics unilaterally sought to give an exclusive license to the entirety in the Superman property's movie and television rights to WBEI post-termination. As a result, the attempt to provide an exclusive license was ineffective. At best, all that was conveyed was a non-exclusive license, and, at worst, a license agreement whose terms are null and void absent ratification by plaintiffs.
>
> Applying these principles in a vacuum, the Court would readily reach the conclusion championed by defendants: WBEI, as a licensee, is answerable only to DC Comics as its licensor; that DC Comics is the only entity that must account for profits to plaintiffs; and, absent exploitation of the works by DC Comics itself, that DC Comics' accounting to plaintiffs is limited to those profits derived from licensing the Superman copyright to WBEI.

542 F. Supp. 2d 1098, 1143–44 (C.D. Cal. 2008) (citations omitted) (ultimately concluding, however, that the equitable remedy of an accounting might nevertheless be appropriate because of "the relatedness of the transferor and the transferee entities"), *rev'd on other grounds sub nom. Larson v. Warner Bros. Entm't*, 504 F. App'x 586 (9th Cir. 2013).

Finally, in *Burkitt*, two band members (Burkitt and Sammon) sued their former bandmate (Scantlin) and individuals or corporations involved in the recording industry (the Universal Defendants) for copyright infringement. 2005 WL 6225822, at *1. In analyzing a similar claim for an accounting, the Eastern District of Louisiana ruled as follows:

> Scantlin recognizes that if Burkitt has any claim against him based on copyright, it is a claim for an accounting. On the other hand, the Universal Defendants contend that plaintiffs have no right of action for an accounting against them because they are licensees and not co-owners. Plaintiffs acknowledge the general rule that licensees are not subject to accounting claims by co-owners. However, plaintiffs maintain that the Universal Defendants were granted an *exclusive* license which is

> a transfer of ownership, thereby subjecting them to plaintiffs' accounting claims. Plaintiffs' argument is without merit.
>
> An exclusive license can only be accomplished by agreement of all co-owners. Because plaintiffs maintain that they did not consent to the license granted to the Universal Defendants, any license granted by Scantlin merely granted a license of the rights of the copyright owner, i.e. a non-exclusive license, rather than a transfer of ownership which is a transfer of all of the rights, i.e. an exclusive license. While a transfer of rights and/or ownership could not be effected by Scantlin alone, the absence of plaintiffs' permission does not nullify the licensing agreement itself.
>
> Taking the factual allegation of plaintiffs' amended complaint as true, Scantlin, without plaintiffs' consent or authorization, only granted a non-exclusive license to the Universal Defendants, thereby making the Universal Defendants licensees. As plaintiffs concede, a licensee is free from liability to a co-owner for an accounting. Accordingly, plaintiffs' claims for an accounting against the Universal Defendants are dismissed.

*Id.* at *13-14 (citations omitted).

For the reasons set forth in these authorities, and indeed for many of the same reasons the Court previously discussed, (*see* Doc. 44 at 22-23), the conduct alleged by Plaintiff could give rise to, at most, a non-exclusive license. The grant of a non-exclusive license does not render Defendant a "co-owner" within the meaning of copyright law. *See* 17 U.S.C. § 101 ("transfer of copyright ownership" does not include nonexclusive license). Therefore, Plaintiff's accounting claim fails.

### b. Plaintiff's Remaining Claims

"The Copyright Act expressly preempts all causes of action falling within its scope, with a few exceptions." *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995). In particular, 17 U.S.C. § 301 preempts causes of action that fall "within the subject matter of copyright" and which protects rights "equivalent" to any of the exclusive rights of a federal copyright. *Id.* at 288-89; *see also Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) ("A right is equivalent if the mere act of reproduction, distribution, or display infringes it."). Defendant argues

that all of Plaintiff's remaining claims are preempted. (Doc. 54-1 at 11-16). Plaintiff argues, *in toto*, that this action is brought under the Court's diversity jurisdiction and that these claims "come from equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners, and therefore, do not fall under the Copyright Act." (Doc. 60 at 9).

Plaintiff's "unjust enrichment/quantum meruit/constructive trust" allegations are that Defendant has received "substantial gains" by reproducing, distributing, manufacturing, lending, licensing, and streaming the completed composition, but has failed to pay Plaintiff his "share" as co-owner. (Doc. 51 at 7-8). As numerous courts within the Fifth Circuit have held, however, similar claims concerning the copying and distribution of copyrighted work are preempted because such claims are typically "qualitatively equivalent" to a cause of action for copyright infringement. *Asunto v. Shoup*, 132 F. Supp. 2d 445, 453 (E.D. La. 2000) (further observing, however, that state law claims for breach of contract or fiduciary duty may not be preempted); *Trevino v. MacSports, Inc.*, 2009 WL 2411916, at *2 (E.D. La. Aug. 5, 2009) (Vance, J.) ("It is . . . hornbook law that preemption applies to unjust enrichment claims based on the copying of a copyrighted work, unless the claim arises out of an alleged contractual breach[.]" (citations omitted)); *McConley v. Boise Bldg. Sols. Mfg., L.L.C.*, 2006 WL 709599, at *5 (W.D. La. Mar. 21, 2006) ("Mr. McConley's claim is not one for damages stemming from a breach of contract claim . . . . [H]is claim is one essentially alleging that he should be compensated because MDC improperly used and distributed his copyright-able work. There does not appear to be any additional element to his claim under the theories of unjust enrichment and quantum meruit."); *see also* 1 *Nimmer on Copyright* § 1.01(g) (2017) ("[A] state law cause of action for unjust enrichment or *quasi* contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.").

13

Here, Plaintiff had no contract with Defendant and argues simply that Defendant copied and distributed a copyrighted work without paying a fair share to Plaintiff. These claims are preempted by the Copyright Act.[3]

Plaintiff's conversion claim is that Defendant has received millions of dollars by reproducing, distributing, licensing, and streaming the completed composition and, by failing to "pay Plaintiff his share," has "converted" the money for its own use. (Doc. 51 at 9). A conversion claim that is based on interference with intangible property is preempted by the Copyright Act, but a conversion claim based on interference with tangible property is not. *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 456-57 & n.12 (5th Cir. 2003) (conversion of physical property under Texas law requires a showing of the unlawful exercise of dominion and control over personal property of another and was not preempted; district court improperly relied on case that "did not address conversion claims regarding physical, tangible property"); *see also Pritikin v. Liberation Publications, Inc.*, 83 F. Supp. 2d 920, 923 n.1 (N.D. Ill. 1999) (citing favorably Paul Goldstein, *Copyright, Patent, Trademark and Related State Doctrines* 777 (3d ed. 1993), for proposition that Copyright Act preempts a conversion claim where plaintiff alleges "only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work."); 1 *Nimmer on Copyright* § 1.01(i) (2017) ("[T]o the extent that there is no tangible embodiment, conversion of an intangible shades into a copyright-style cause of action, and thus cannot survive. Thus, for example, an allegation of theft or conversion of satellite signals does not involve tangible property, and is therefore pre-empted, although the interception of a cable transmission may qualify as conversion under state law. By the same token, after 1978, an action for conversion by duplication and distribution of sound recordings should not go forward.").

---

[3] Additionally, Plaintiff's request for the imposition of a constructive trust is based on Defendant's status as a co-owner. (Doc. 51 at 8). As discussed *supra*, Defendant is not a co-owner of the completed composition.

Here, Plaintiff does not allege that Defendant converted Plaintiff's physical personal property for its own use or benefit, but merely that Defendant has distributed Plaintiff's intellectual property without paying Plaintiff a fair share. Again, these claims are preempted by the Copyright Act.

Finally, Plaintiff's negligence claims allege that Defendant improperly failed to account to Plaintiff, failed to "pay Plaintiff," and failed to properly identify Plaintiff as a co-owner. (Doc. 51 at 10). These claims are generally duplicative of claims sounding in copyright. *Bridgeport Music, Inc. v. 11C Music*, 154 F. Supp. 2d 1330, 1335 (M.D. Tenn. 2001) ("What Plaintiffs have described as 'duties' are essentially the components of a properly functioning licensing regime. Follow-on artists and recording companies should 'ascertain' and 'investigate' that their music is original. If not, they should 'inform,' 'alert,' 'credit,' 'identify,' and 'account to' the copyright holders of the original works. Such steps are taken to avoid copyright infringement, not forestall common law negligence. Simply describing these elements as somehow different does not sufficiently distance them from rights protected in copyright."); *AF Holdings, LLC v. Doe*, 2012 WL 4747170, at *3 (N.D. Cal. Oct. 3, 2012) ("Here, AF Holdings' negligence claim alleges that Botson's actions (or inaction) played a role in the unlawful reproduction and distribution of the Video in violation of the Copyright Act. Simply characterizing a copyright infringement claim as a tort does not add the extra element so as to change the nature of the cause of action."); *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 298 (E.D. Pa. 2017) (appeal pending) ("Courts have held that state law negligence claims lack the 'extra element' to avoid preemption."); *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215, 228 (S.D.N.Y. 2010) ("Here, the plaintiffs advance [a claim] that the defendants owed a duty not to infringe on the plaintiffs' intellectual property. Because it fails to assert an 'extra element' beyond the rights protected by federal copyright, the

negligence claim is preempted."). For substantially the same reasons, Plaintiff's negligence claims are preempted by the Copyright Act.[4]

## VI. Conclusion

Accordingly, **IT IS ORDERED** that Defendant's Motion (Doc. 54) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE.** Judgement will be entered consistent with this order.[5]

Signed in Baton Rouge, Louisiana, on February 16, 2018.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[4] The Court also agrees with Defendant that Plaintiff's allegations concerning any duty owed by Defendant are inadequate. (*See* Doc. 54-1 at 19-20); *cf. Davis*, 505 F.3d at 100 (licensee is not liable to non-licensing co-owner for use authorized by the license).

[5] Because of the nature of the Third Amended Complaint's deficiencies, granting further leave to amend would be futile. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n,* 751 F.3d 368, 378 (5th Cir. 2014).